**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200209-U

Order filed October 4, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0209 Circuit No. 10-CF-500 |
| DOMINICK M. SANDERS, | ) ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices McDade and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: The court did not err by summarily dismissing the defendant's postconviction petition.

¶ 2     The defendant, Dominick M. Sanders, appeals the first-stage dismissal of his postconviction petition, arguing that the Peoria County circuit court erred by dismissing the petition because it stated the gist of a claim that his sentence is unconstitutional as applied to him.

¶ 3                                  I. BACKGROUND

¶ 4    After a jury trial, the defendant was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2010)), aggravated battery with a firearm (*id.* § 12-4.2(a)(1)), aggravated discharge of a firearm (*id.* § 24-1.2(a)(1)), aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1)), and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). The evidence established that Nick and Davon Renfro engaged in a verbal argument with Willie Wilson, which turned into a physical altercation. *People v. Sanders*, 2016 IL App (3d) 130511, ¶ 4. After the conclusion of the fight, Joyce Renfro (Nick and Davon's mother) engaged in an argument with a woman named Patrice. *Id.* Patrice summoned the defendant, who exited a nearby apartment and began shooting an automatic firearm. *Id.* The defendant shot Joyce in the leg and Nick in the back. *Id.* Nick died while being transported to the hospital. *Id.*

¶ 5    The defendant was originally sentenced to 45 years' imprisonment for first degree murder, plus a 25-year firearm enhancement; a consecutive term of 25 years' imprisonment for aggravated battery with a firearm; and concurrent terms of 10 years' imprisonment for aggravated discharge of a firearm and 7 years' imprisonment for aggravated unlawful use of a weapon. *Id.* ¶ 1. On the unlawful use of a weapon by a felon count, no sentence was entered. *Id.* ¶ 6. However, on direct appeal this court reversed the defendant's sentence and remanded for a new sentencing hearing as the court erroneously considered a factor inherent in the offense of first degree murder. *Id.* ¶ 17.

¶ 6    On remand, the defendant's presentence investigation report (PSI) was updated, but also included information from the previous PSI. The PSI stated that the defendant denied any involvement in gangs and denied committing the offenses. The defendant had been on probation at the time he committed the offenses in this case. He had multiple prior convictions. The defendant had completed the ninth grade. He had never been employed until he went to the Illinois Department of Corrections (IDOC). While the defendant had taken general education diploma

(GED) courses in the IDOC, he had not obtained his GED. Regarding the defendant's family, he noted that he had last seen his father when he was 12 or 13 years old and was raised by his mother, Helen Sanders. The defendant reported that he began smoking cannabis and drinking alcohol when he was 18 years old. Prior to his arrest, he smoked five or six "blunts" a day and drank alcohol on the weekends. He had no prior drug or alcohol treatment, was in good mental and physical health, and took no prescription medications. The defendant was 22 years old at the time he committed the offenses.

¶ 7　　　　Helen had filled out a PSI questionnaire in 2013, which stated that the defendant did not have any problems during his childhood and was not a disciplinary problem as a child or teen. The defendant had a good relationship with his mother. He was not violent and did not have any learning disabilities. Helen stated that the defendant did not have a drug or alcohol problem, and his friends and peers were a good support and a good influence. According to Helen, the defendant was not abused as a child.

¶ 8　　　　The case proceeded to a new sentencing hearing. The State did not present any evidence in aggravation. Helen testified that she talked to the defendant regularly since he had been in the IDOC and noted that he had matured significantly. She stated that the defendant was very remorseful for his actions. The defendant chose not to offer a statement in allocution. The court sentenced the defendant to the same sentence he had previously received. In doing so, the court stated, *inter alia*,

> "The defendant is 28 years old. He was somewhere around 21 at the time, I think. Not a child. Not a babe in the woods. There was no crowd around him, chanting him on. There was no evidence that anybody pushed him out the door

3

and said, 'Go get 'em, pal.' He was a table of 1, no waiting, all by himself and a gun."

The defendant again challenged his sentence on direct appeal. This court affirmed the sentence. *People v. Sanders*, 2019 IL App (3d) 170188-U, ¶ 2.

¶ 9　　　　On March 9, 2020, the defendant filed a *pro se* postconviction petition, which is the subject of this appeal. In the petition, the defendant argued, in pertinent part, that his sentence violated the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. The defendant cited *Miller v. Alabama*, 567 U.S. 460 (2012), and related case law regarding juvenile sentencing. The defendant stated:

> "Although, [the defendant] was a young adult of [22] years of age at the time the alleged crime occurred, the same science with respects to the brain development in juvenile offenders applies likewise to young adults, where studies have concluded that the brain is not fully developed up to and including individuals 24 years of age. [The defendant] was raised in a single parent household in an impoverished gang and drug infested housing projects in Peoria, Illinois. [The defendant] was recruited and joined a violent street gang "Gangster Disciples["] or (G.D.'s) at the age of 11 years old, where he was continuously influenced by negative influences throughout his adolescent years into young adulthood. At the age of 13 he began to experiment with drugs and started to abuse various narcotic substances, and as a result his values and interest in obtaining an education diminished."

The defendant attached to the petition his affidavit stating that everything contained in the petition was true and accurate as well as a document titled "Scientific Rationale to Extend the

4

*Graham/Roper/Miller* protections upward from age 18 to 25," written by James Garbarino at Loyola University Chicago. On May 15, 2020, the court issued a written order summarily dismissing the defendant's petition. The defendant appealed.

¶ 10                                    II. ANALYSIS

¶ 11          The defendant argues that the circuit court erred by dismissing his postconviction petition as frivolous and patently without merit. Specifically, the defendant argues that his petition stated the gist of an arguable claim that his sentence is unconstitutional as applied to him, where he was 22 years old at the time of the offenses and the court did not consider his youth and its attendant characteristics in imposing the *de facto* life sentence.

¶ 12          At the outset, we note that the State argues that the defendant's claim is barred by *res judicata* as the defendant could have raised it during his direct appeal. However, as the defendant raises an as-applied constitutional challenge, we find that his claim is more properly raised in a postconviction petition. See *People v. Harris*, 2018 IL 121932, ¶ 41 (finding "a reviewing court is not capable of making an as-applied finding of unconstitutionality in the 'factual vacuum' created by the absence of an evidentiary hearing and findings of fact by the trial court" and the defendant's juvenile sentencing claim would be more properly raised in a collateral proceeding (quoting *People v. Minnis*, 2016 IL 119563 ¶ 19)). Therefore, we will consider whether his petition stated the gist of a constitutional claim.

¶ 13          The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a process for a criminal defendant to assert that his conviction or sentence resulted from a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The defendant need only state the "gist" of a constitutional claim at the first stage. *Id.* The petition may be summarily dismissed at the first stage of proceedings if

it is frivolous or patently without merit, such that it "has no arguable basis either in law or in fact." *Id.* at 16. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.*

¶ 14 The defendant raised his claim under both the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution. The eighth amendment prohibits the infliction of cruel and unusual punishment. U.S. Const., amend. VIII. The United States Supreme Court has applied the eighth amendment to juvenile offenders who have committed serious offenses. See *Roper v. Simmons*, 543 U.S. 551, 578 (2005) (holding the eighth amendment prohibited imposition of the death penalty for offenders under the age of 18); *Graham v. Florida*, 560 U.S. 48, 82 (2010) (the eighth amendment prohibits life without parole for juvenile offenders convicted of a crime other than homicide); *Miller*, 567 U.S. at 479 (the eighth amendment forbids mandatory life without parole for juvenile offenders). The Illinois Supreme Court has further extended these protections. See *People v. Reyes*, 2016 IL 119271, ¶¶ 9-10 (*Miller* applied to *de facto* life sentences); *People v. Buffer*, 2019 IL 122327, ¶ 41 (defining a *de facto* life sentence for a juvenile as one of more than 40 years). For juvenile claims under the eighth amendment, the United States Supreme Court has specifically drawn the line at the age of 18. *Harris*, 2018 IL 121932, ¶ 58 (citing *Miller*, 567 U.S. at 465). Therefore, the defendant's claim, as it relates to the eighth amendment, is meritless since he was 22 years old at the time of the offenses.

¶ 15 The Illinois Supreme Court has included the possibility that young adult offenders could raise a claim arguing their sentence was unconstitutional under the proportionate penalties clause. See *People v. Thompson*, 2015 IL 118151, ¶ 44 (finding a 19-year-old defendant was "not necessarily foreclosed from renewing his as-applied [*Miller*] challenge in the circuit court" in a

6

postconviction petition). "The key question in this case is whether defendant falls into the category of 'young adult offenders.' " *People v. Montanez*, 2022 IL App (1st) 191930, ¶ 54. "The vast majority of [appellate court] cases have drawn a bright line at 21 years old in determining who qualifies as a 'young adult offender.' " *Id.* ¶ 55. Our legislature has also continuously drawn the line at 21 years old. As the court said in *People v. Humphrey*, 2020 IL App (1st) 172837, ¶ 34:

> "While 21 is undoubtedly somewhat arbitrary, drawing a line there is in keeping with other aspects of criminal law and society's current general recognition that 21 is considered the beginning of adulthood. In Illinois, a person under the age of 21 when he or she commits first degree murder is now eligible for parole review after serving 20 or more years of his or her sentence. 730 ILCS 5/5-4.5-115 (West Supp. 2019). The Illinois legislature has also prohibited the sale of nicotine and tobacco products to persons under 21 (720 ILCS 675/1 (West Supp. 2019)), prohibited the sale of alcohol products to persons under 21 (235 ILCS 5/6-16 (West 2016)); and made possession of a firearm by those under the age of 21 an aggravating factor for aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2016))."

The majority of cases concerning a 22 year or older defendant have upheld the first-stage dismissal of the defendant's postconviction petition in similar circumstances. See, *e.g.*, *People v. Guerrero*, 2022 IL App (1st) 210400, ¶ 34 (upholding first-stage dismissal of the defendant's postconviction petition where the defendant was 22 years old); *People v. Williams*, 2021 IL App (1st) 190535, ¶ 36 (same); *People v. Suggs*, 2020 IL App (2d) 170632, ¶¶ 35-36 (same for 23-year-old defendant). We agree with this line of reasoning and find that, because the defendant was 22 years old at the time of the offense, he was not a young adult offender, and his claim has no basis in law.

7

¶ 16    Moreover, even accepting the defendant's age, the defendant's petition did not state the gist of a constitutional claim. Though he only needed to present a limited amount of detail in his petition, that does not mean that he was "excused from providing any factual detail at all surrounding the alleged constitutional deprivation." *People v. Delton*, 227 Ill. 2d 247, 254 (2008). For the defendant to make his claim under *Miller* and its progeny, he had to allege how the evolving science on juvenile maturity and brain development applied to the facts of his case. See *Harris*, 2018 IL 121932, ¶ 46. "In other words, defendant's claim must allege facts specific to him as a 22-year-old adult and how they rendered him more akin to a juvenile when he committed his offenses." *Williams*, 2021 IL App (1st) 190535, ¶ 28. While a first-stage petition is liberally construed, the court need not take facts as true if they are affirmatively rebutted by the trial record. *People v. Coleman*, 183 Ill. 2d 366, 381 (1998); *People v. Rademacher*, 2016 IL App (3d) 130881, ¶ 26.

¶ 17    Here, the only factual allegations the defendant raised in his petition were he (1) was raised in a single parent household in "impoverished gang and drug infested housing projects," (2) joined a gang when he was 11, (3) was "influenced by negative influences" into adulthood, and (4) was 13 years old when he began experimenting with drugs and abusing various narcotics. However, many of these allegations are rebutted by the record from the defendant's sentencing hearing. The defendant reported in his PSI that he never joined a gang, did not use narcotics, and began smoking cannabis and drinking alcohol when he turned 18 years old. The defendant committed the crime on his own; it was not the product of peer pressure or negative influence. His mother also reported that the defendant did not have a drug or alcohol problem, his friends and peers were a good support and a good influence, and the defendant was not abused as a child. There is nothing to show that the defendant's cognitive abilities were somehow affected or lessened by the

8

circumstances of his upbringing or that his cognitive development was that of a juvenile at the time he committed the offenses. Because *Miller* and its progeny do not apply to a 22-year-old offender, the defendant's factual allegations are rebutted by the record, and the defendant's cognitive abilities were not that of a juvenile at the time of the crime, we find that the court properly dismissed the defendant's postconviction petition at the first stage.

¶ 18    In coming to this conclusion, we reject the defendant's reliance on *People v. Savage*, 2020 IL App (1st) 173135, ¶ 76, which advanced a postconviction petition to the second stage where the defendant was 22 years old, finding that the claim was not frivolous. We disagree with the determination that such a claim is not frivolous, and we decline to follow *Savage*. See *People v. McKee*, 2017 IL App (3d) 140881, ¶ 33. Further, *Savage* is factually distinguishable. In *Savage*, the defendant alleged that his long-term drug addiction left him more susceptible to peer pressure and rendered him " 'more volatile in emotionally charged settings.' " *Savage*, 2020 IL App (1st) 173135 ¶ 71. The defendant argued that his drug addiction and other issues made him the functional equivalent of a juvenile. *Id.* ¶ 60. The *Savage* court found the defendant's allegations were supported by detailed hospital records and the PSI. *Id.* ¶ 72. This is a vast difference from the defendant's claim, where his allegations were rebutted by the record.

¶ 19                                III. CONCLUSION

¶ 20    The judgment of the circuit court of Peoria County is affirmed.

¶ 21    Affirmed.